04-40005

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

|  |  |  |
|---|---|---|
| EXPRESS FRANCHISE SERVICES, L.P., a Texas limited partnership, and WRS PERSONNEL FINDERS OF MASSACHUSETTS, INC., D/B/A EXPRESS PERSONNEL SERVICES, a Massachusetts corporation, | ) ) ) ) ) ) | Civil Action No. |
| Plaintiffs, | ) ) ) |  |
| vs. | ) ) |  |
| EXPRESS TEMPS, INC., a Massachusetts corporation, and WILLIAM J. COMEAU, an individual and citizen of Massachusetts, | ) ) ) |  |
| Defendants. | ) ) ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Express Franchise Services, L.P. ("Express") and WRS Personnel Finders of Massachusetts, Inc., d/b/a Express Personnel Services ("Franchisee") (collectively, "Plaintiffs"), by their undersigned attorneys, submit this memorandum of law in support of their Motion for Preliminary Injunction against defendants Express Temps, Inc. ("Express Temps") and William Comeau (collectively, "Defendants").

### INTRODUCTION

Plaintiffs seek a preliminary injunction against Defendants enjoining each of them from:

(1)     using the service mark or trademark EXPRESS TEMPS, or any variation employing the word EXPRESS, alone or in combination with any other words or letters, in

connection with providing temporary or permanent employment agency services or staffing services and from committing acts of unfair competition with Plaintiffs;

(2)     engaging in any false or misleading advertising, or using any false designation of origin or false description, that can, or is likely to, lead the trade or public to believe that any service offered by, or product manufactured, distributed, or sold by Defendants, or any of them, is an any manner associated or connected with, or sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs, or any of them; and

(3)     assisting, aiding, or abetting any other person or business entity from engaging or performing any of the activities referred to in subparagraphs (1) and (2) above.

## FACTS

Plaintiff Express Franchise Services, L.P. ("Express") is a Texas limited partnership with its principal place of business in Oklahoma City, Oklahoma, and has, for over twenty (20) years, been engaged in the business of, among other things, providing temporary and permanent employment agency services and staffing services under its valuable and well known EXPRESS family of marks, which include common law trademarks and service marks and well as service marks registered with the United States Patent and Trademark Office and the Office of the Secretary of the Commonwealth of Massachusetts (collectively, the "EXPRESS® Marks "). (Verified Complaint, ¶¶ 2 and 13.) The EXPRESS® Marks include specifically Express® and Design, Express Temporary Service® and Design and Express Temporary Services[SM]. (Verified Complaint, ¶¶ 14 and 15.)   Plaintiff Express has expended, and continues to expend, a substantial amount of time, money, and effort promoting, marketing, and advertising its employment-related services under and in connection with its valuable and highly recognized EXPRESS® Marks. (Verified Complaint, ¶ 19.)  For example, Plaintiff Express has expended

2

over $100 million in the last twenty (20) years to promote its company and services, including via the Internet, in national publications, newspapers, at trade shows and on the radio and television, and has realized over $8 billion in gross revenues in the provision of such services during the same period of time. (Id.)

Plaintiff Express currently operates a nationwide franchise system with more than 400 franchisees operating under the EXPRESS® Marks, and has authorized Plaintiff WRS Personnel Finders of Massachusetts, Inc., d/b/a Express Personnel Services ("Franchisee"), a Massachusetts corporation, to open a franchised operation in Worcester, Massachusetts. (Verified Complaint, ¶¶ 3, 18 and 24.) Plaintiff Franchisee has been providing temporary and permanent employment agency services under the EXPRESS® Marks since February of 2003. (Verified Complaint, ¶ 24.) Plaintiff Express has been consistently recognized by the trade as one of the nation's top franchise companies and one of the largest and fastest-growing privately-held companies. (Verified Complaint, ¶ 19.) For example, in October of 2002, Franchise Times ranked Plaintiff Express as #1 of the top 200 franchise companies, and in 2003 and prior years, Entrepreneur ranked Plaintiff Express as #1 in franchise companies for business services/staffing. (Id.) Further, on November 27, 2000, Forbes ranked Plaintiff Express as #424 of the 500 top private companies for 1999 revenue, and in December of 1998, Inc. ranked Plaintiff Express as #9 of the 500 fastest growing private companies. (Id.).

Upon information and belief, Defendant Express Temps, Inc. ("Express Temps") is a Massachusetts corporation with its principal place of business in Worcester, Massachusetts, and Defendant William J. Comeau is an individual residing in Massachusetts, and is the sole shareholder, sole officer and sole director of Defendant Express Temps. (Verified Complaint,

¶¶ 4 and 5.)  Upon information and belief, long after Plaintiff Express' adoption and use of the EXPRESS® Marks in connection with employment agency and other services, and after Plaintiff Express obtained its federal service mark registrations, Defendants adopted and used, and are now using, in this judicial district, in direct competition with Plaintiffs, the EXPRESS® Marks or marks confusingly similar thereto, including specifically EXPRESS and/or EXPRESS TEMPS (the "Infringing Marks") for personnel-related services (the "Infringing Services"), and have caused said Infringing Services and Infringing Marks to enter into interstate commerce and/or be used in interstate commerce.  (Verified Complaint, ¶¶ 25 and 26.)

In fact, Plaintiffs are aware of actual instances in which the purchasing public has confused Defendants' Infringing Services and Infringing Marks with those of Plaintiff Express and its authorized franchisees.  (Verified Complaint, ¶ 40.)  The Infringing Services include specifically temporary and permanent employee placement to manufacturing, assembly and warehouse companies located in Massachusetts and Connecticut, which services are advertised on Defendants' web site located at http://www.extemps.com, and, upon information and belief, at trade shows.  (Verified Complaint, ¶ 27.)  Defendants, in willful disregard of Plaintiffs' rights, have continued using the EXPRESS® Marks despite Plaintiff Express' demands that they cease and desist, therefore requiring Plaintiffs to bring this action to protect their valuable trademark rights.  (Verified Complaint, ¶ 31.)

In sum, the parties' marks are virtually identical, are used in similar lines of trade and are marketed in a similar fashion to a common class of customers, leading to the inescapable conclusion that a likelihood of confusion exists.  Therefore, Plaintiffs respectfully request that a preliminary injunction be granted.

## ARGUMENT

I.    <u>The Standard For Issuing A Preliminary Injunction In A Trademark Infringement Case.</u>

      In the First Circuit, a preliminary injunction may be issued when a moving plaintiff demonstrates the following:  (1) likelihood of success on the merits; (2) the plaintiff will suffer irreparable injury if the preliminary injunction is not granted; (3) any such injury outweighs any harm to the defendant if the injunction is granted; and (4) the public interest would not be adversely affected by issuance of the injunction.  <u>See</u> <u>Equine Technologies, Inc. v. Equitechnology, Inc.</u>, 68 F. 3d 542, 544 (1st Cir. 1995) (affirming award of preliminary injunctive relief in trademark infringement action).  In determining whether a preliminary injunction should issue in a trademark infringement case, the dispositive issue is whether there is a likelihood of confusion between the parties' marks.  <u>Id.</u>; <u>See also</u> <u>Public Service Co. of New Mexico v. Nexus Energy Software, Inc.</u>, 36 F. Supp. 2d 436, 437-38 (D. Mass. 1999) (issuing preliminary injunction after plaintiff showed likelihood of success on the merits of its trademark infringement claim).  Where the plaintiff demonstrates a likelihood of success on the merits, "two consequences follow: (1) there will be a strong likelihood that plaintiff will suffer irreparable injury absent an injunction; and (2) the preliminary injunction will be found to be beneficial to the public interest."  <u>Boustany v. Boston Dental Group, Inc.</u>, 42 F. Supp. 2d 100, 104 (D. Mass. 1999) (quoting <u>Stop & Shop Supermarket Co. v. Big Y Foods, Inc.</u>, 943 F. Supp. 120, 122 (D. Mass. 1996)).  Because Plaintiffs are likely to prevail on the merits, a preliminary injunction should issue against Defendants, enjoining them from further use of the EXPRESS and EXPRESS TEMPS marks in violation of Plaintiffs' rights.

II.    **Plaintiffs Are Entitled To A Preliminary Injunction On Their Claims For Trademark Infringement And False Designation of Origin.**

The same factors and analysis for likelihood of confusion for trademark infringement under 15 U.S.C. § 1114(a) are applicable to claims for false designation of origin under 15 U.S.C. § 1125(a). See Northern Light Technology, Inc. v. Northern Lights Club, 97 F. Supp.2d 96, 120 (D. Mass. 2000), aff'd 235 F.3d 57 (1st Cir. 2001).

Applying the above factors and analysis to the facts at issue here compels the conclusion that Plaintiff is entitled to the requested preliminary injunction on its trademark infringement (Counts I and VI[1]) and false designation of origin (Count II) claims. Further, the Massachusetts Consumer and Business Protection Act requires only a showing that an unfair method of competition and/or an unfair or deceptive act or practice "*may have* the effect of causing [a] loss of money or property" in order to permit injunctive relief. M.G.L. ch. 93A, § 11 (emphasis added). Accordingly, given that Plaintiffs show a *likelihood* of confusion by Defendant's conduct, sufficient grounds exists to enter an injunction on its state law unfair or deceptive trade practices claims (Count IV).

A.    **The evidence demonstrates that Plaintiffs are likely to prevail on the merits of their trademark infringement and false designation of origin claims.**

To determine whether Plaintiffs are likely to prevail on their trademark infringement and false designation of origin claims, the Court must determine whether: (1) Plaintiffs own a distinctive mark entitled to trademark protection; (2) Plaintiffs have used such mark in interstate commerce; and (3) Defendants have used such mark in a manner likely to cause confusion as to the origin of the goods or services. Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F.

---

[1] The trademark infringement discussion herein is focused primarily on the Lanham Act claim. "Because trademark infringement is defined in essentially the same terms under the Lanham Act and under Massachusetts law [a plaintiff's] likelihood of success on the merits of any of the state claims will not be different enough to merit separate discussion." LeeJay, Inc., v. Bed Bath & Beyond, Inc., 942 F.Supp. 699, 701 n.2 (D. Mass 1996).

Supp. 994, 1006 (D. Mass. 1998) (citation omitted); <u>See also</u> <u>Public Service Co. of New Mexico</u>,

36 F. Supp. 2d at 438.

> 1. **Plaintiffs have priority with respect to the EXPRESS® Marks, and such EXPRESS® Marks, by virtue of their federal registration, are presumed valid.**

Plaintiffs have easily met the first two prongs of the test. Exclusive rights in a trademark

derive from priority of use. <u>Boston Athletic Assn. v. Sullivan</u>, 867 F.2d 22, 27 (1st Cir. 1989).

Plaintiff Express' priority of use of the EXPRESS® Marks cannot be challenged. Since May 24,

1983, Plaintiff Express has continuously used EXPRESS in connection with its various

temporary help and employment agency services. (Verified Complaint, ¶ 3.) Further, on June

4, 1991, Plaintiff Express obtained registration of EXPRESS, Reg. No. 1,647,022, in

International Class 35 on the Principal Register of the USPTO. (Verified Complaint, ¶ 14.)

Moreover, Plaintiff Express has obtained various other registrations incorporating the word

EXPRESS, including, specifically EXPRESS TEMPORARY SERVICE and Design, Reg. No.

1,718,629 (issued September 11, 1992), in International Class 35 on the Principal Register of the

USPTO, and EXPRESS TEMPORARY SERVICES, Reg. No. 62,299 (issued December 10,

2002), in the Office of the Secretary of the Commonwealth of Massachusetts. (Verified

Complaint, ¶¶ 14-15.) Defendants' first use of EXPRESS and/or EXPRESS TEMPS did not

take place until 1999. (Verified Complaint, ¶ 7.) Thus, Plaintiffs have clearly established

priority with respect to their use of the EXPRESS® Marks vis-à-vis Defendants. Further, the

federal trademark registrations are prima facie evidence of the validity of the marks and of

Plaintiff Express' exclusive right to use the marks in connection with the services identified in

the registrations. <u>See</u> 15 U.S.C. § 1057(b); <u>Equine Technologies</u>, 68 F. 3d at 544.

> 2. **Defendants' use of EXPRESS and EXPRESS TEMPS infringes Plaintiff's rights and is likely to cause confusion.**

In analyzing likelihood of confusion, the First Circuit considers the following factors: (1) the similarity of the marks; (2) the similarity of the goods and services; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective customers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of plaintiff's mark. Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989). Although each factor should be considered, no one factor is determinative and it is not necessary that actual confusion be shown. Id. at 222-23.

> **a.** **Plaintiff Express' EXPRESS® Marks and Defendants' EXPRESS and EXPRESS TEMPS marks are confusingly similar.**

Similarity of marks "may be the most important" of the likelihood of confusion factors because of its obvious potential to drive consumer behavior. See Maple Grove Farms of Vt., Inc. v. Euro-Can Prods., Inc., 974 F. Supp. 85, 95 (D. Mass. 1997). As the First Circuit has held, trademark protection extends beyond identical copying to include confusingly similar designations. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 30 (1st Cir. 1989); Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987) ("Words may be recognized as similar because of sound, appearance, and meaning, and a finding of similarity may be based on appearance alone.").

Further, similarity is not limited to the eye or ear. "The use of a designation which causes confusion because it conveys the same idea, or stimulates the same mental reaction, or has the same meaning is enjoined on the same basis as where the similarity goes to the eye or ear." Standard Oil Co. v. Standard Oil Co., 252 F.2d 65, 116 U.S.P.Q. 176 (10th Cir. 1958). The "meaning" that is alleged to be similar can be determined from standard dictionary

definitions. <u>Tornado Industries, Inc. v. Typhoon Industries, Inc.</u>, 20 Misc. 2d 43, 187 N.Y.S.2d 83, 121 U.S.P.Q. 328 (1959).

In the case at hand, several of the EXPRESS® Marks are composite word-design marks, consisting of words (in stylized letters) next to a "running man" design. In the trademark infringement analysis, if one mark consists of a design and a word, and the other mark of merely a word, similarity is usually controlled by determining whether the word or the design dominates the first mark. 3 <u>McCarthy on Trademarks</u> § 23:47, at 23-138 (2003), <u>citing</u> <u>In re Strathmore Products, Inc.</u>, 171 U.S.P.Q. 766 (T.T.A.B. 1971) (comparing "Glisten" and tear drop design to "Gliss'n", and holding that design was mere background and incidental to dominant word and that marks were confusingly similar because of phonetic and meaning identity between word marks). In cannot seriously be disputed that the words in the composite EXPRESS® Marks dominate such marks.

The marks at issue in this case are confusingly similar. Defendants are using EXPRESS TEMPS—a nearly identical and confusingly similar variant of Plaintiff Express' EXPRESS TEMPORARY SERVICE® and EXPRESS TEMPORARY SERVICES<sup>SM</sup> marks, and a mark that incorporates Plaintiff Express' EXPRESS® mark. Courts in this jurisdiction and others have found that marks that have a similar prefix and differ only by the addition or deletion of letters or addition of a modifying word are confusingly similar. <u>See</u>, <u>e.g.</u>, <u>Star Financial Services, Inc. v. Aastar Mortgage Corp.</u>, 89 F.3d 5 (1st Cir. 1996) ("Aastar" confusingly similar to "Star"); <u>Volkswagonwerk</u>, 814 F.2d 812 ("Beetle Barn" confusingly similar to "Beetle"); <u>Aura Communications, Inc. v. Aura Networks, Inc.</u>, 148 F. Supp. 2d 91 (D. Mass. 2001) ("Aura Networks" confusingly similar to "Aura"); <u>Equine Technologies</u>, 68 F.3d at 546 ("Equitechnology" confusingly similar to "Equine Technologies"); <u>Thrifty Rent-A-Car Sys., Inc.</u>

9

V. Thrift Cars, Inc., 639 F.Supp. 750 (D. Mass. 1986) ( "Thrift" confusingly similar to

"Thrifty"); Boustany, 42 F. Supp. 2d 100 ("Boston Dental Group, Inc." confusingly similar to

"Boston Dental"); Public Service Co. of New Mexico, 36 F. Supp. 2d 436 ("eNERGY place"

and "energyplace.com" confusingly similar to "Energy Place"); Supercuts, Inc. v. Super Clips,

18 U.S.P.Q.2d 1378 (D. Mass. 1990) ("Super Clips" confusingly similar to "Supercuts"); The

Earth Tech. Corp. v. Environmental Research & Tech., Inc., 222 USPQ 585 (C.D. Cal. 1983)

("Ertec" confusingly similar to "Ert").  Further, Merriam-Webster's Collegiate Dictionary defines

"temp" as "a temporary worker," which clearly relates to the temporary employment services

described in Plaintiff Express' registrations.  Merriam-Webster's Collegiate Dictionary (10th ed.

2002), available at http://www.m-w.com.

In sum, Defendants have adopted Plaintiff Express' EXPRESS®, EXPRESS

TEMPORARY SERVICE® and EXPRESS TEMPORARY SERVICES[SM] marks in their

entirety.  The abbreviation of TEMPORARY SERVICE(S) to TEMPS does nothing to mitigate

the resulting confusion.  Therefore, the marks are confusingly similar.

> **b.** *The parties directly compete with similar goods and services.*

The key inquiry for the similarity of the goods and services factor is the extent to which

the parties' goods and services are related in the minds of the public.  Northern Light, 97 F.

Supp. 2d at 111.  There is a strong likelihood of confusion where parties offer virtually the same

goods and services.  Boston Athletic, 867 F.2d at 30.  In this case, the parties directly compete

for the same customers with identical or nearly identical services.  According to its Internet web

site, http://www.extemps.com, Defendant Express Temps provides employment and staffing

services, including specifically temporary and permanent employee placement to manufacturing,

assembly and warehouse companies located in Massachusetts and Connecticut.  (Verified

Complaint, ¶ 27.) Plaintiff Express, and its authorized franchisee, Plaintiff Franchisee, provide

the same services throughout the United States and Massachusetts. (Verified Complaint, ¶¶ 13,

18, 20 and 24.) Given that Plaintiff Express, through its authorized franchisees, including

Plaintiff Franchisee, and Defendant Express Temps compete in the same market for the same

customers, and share nearly identical names, confusion is likely among consumers in this field,

who are likely to perceive that Defendant Express Temps is associated with, sponsored by, or a

licensed franchisee of, Plaintiff Express.

> c.     *The channels of trade, advertising and consumers are similar.*

The channels of trade, advertising and prospective purchasers factors are interrelated,

and, under First Circuit law, are typically considered together. See Equine Technologies, 68

F.3d at 546; Boston Athletic Ass'n, 867 F.2d at 30. Plaintiff Express promotes its services,

without limitation, via its Internet web sites, through favorable press coverage, and through

participation at trade shows. (Verified Complaint, ¶ 19.) Defendant Express Temps promotes its

services through its Internet web site and trade shows. (Verified Complaint, ¶ 27.); See also

Paccar, Inc. v. Telescan Technologies, LLC, 319 F.3d 243, 252-53 (6th Cir 2003); Brookfield

Comm., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1057 (9th Cir. 1999) (fact that

both parties utilize the Internet as a method of marketing and advertising is "a factor courts have

consistently recognized as exacerbating the likelihood of confusion"); Aura, 148 F.Supp.2d at 95

(finding trade channels were similar where both companies offered their products for sale on

their Internet web sites, and advertised their products at conferences, even though they did not

attend the same conferences). Additionally, the parties direct their marketing efforts to the same

classes of prospective customers, in particular companies in need of temporary or permanent

staffing or employment services. (Verified Complaint, ¶¶ 13, 18, 20 and 24-27.) Therefore,

these factors weigh in favor of a finding of confusion, and the issuance of a preliminary injunction.

### d.    There is evidence of actual confusion.

To establish likelihood of success on the merits, it is not necessary to show actual confusion; but rather, all that is required is a likelihood of confusion. Volkswagenwerk, 814 F.2d at 818. In this case, however, Plaintiff Express has knowledge of instances of actual confusion. For example, a job applicant made an appointment for an interview at the offices of Plaintiff Franchisee. The applicant reported that she mistakenly went to the offices of the Defendant Express Temps, was interviewed, and was offered a position. The applicant rejected the offer after she realized her error. (Verified Complaint ¶40). Further, an existing client of Plaintiff Franchisee informed Plaintiff Franchisee that the client relied upon Plaintiff Franchisee to meet all of the client's employment and staffing needs. During a site visit, the Plaintiff Franchisee observed temporary workers whom it had not placed. The client reported that it had phoned Defendant Express Temps in the belief that client had phoned Plaintiff Franchisee. Id. Even though Plaintiff Express is not offering this evidence of actual confusion for the truth of the matter asserted, but rather to show the prospective customers' state of mind, see Supercuts, Inc., 18 U.S.P.Q.2d 1378, n.7, hearsay evidence may be considered in preliminary injunction proceedings. See Asseo v. Pan American Grain Co., 805 F.2d 23, 26 (1st Cir. 1986). Again, this factor weighs in favor of a finding of confusion, and the issuance of a preliminary injunction.

### e.    Defendants' intent in adopting EXPRESS and EXPRESS TEMPS is suspect.

Evidence of bad faith or intent to confuse consumers is not necessary to prevail in a trademark infringement case. I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 44 (1st Cir. 1998). Moreover, a finding of good faith is no defense if likelihood of confusion is established. Aastar,

89 F.3d at 11. Indeed, "[w]hen one adopts a mark similar to one already in use, there is an affirmative duty to avoid any likelihood of confusion." <u>Volkswagenwerk</u>, 814 F.2d at 817 (holding that defendants' use of "Beetle Barn" was confusingly similar to plaintiff's prior use of "Beetle", and defendants presented no evidence that they acted affirmatively to avoid confusion).

As a second-comer to the market, Defendant Express Temps acted at its peril and had an affirmative duty to select and adopt a name that avoided a likelihood of confusion with Plaintiff Express, a prior user in the marketplace. Prior to Defendants' use of EXPRESS and EXPRESS TEMPS, in the market in which Plaintiffs and Defendants now conduct business as direct competitors, Plaintiff Express had been using its EXPRESS family of marks for over sixteen (16) years. (Verified Complaint, ¶¶ 7 and 13.) In addition, Defendants had constructive notice of Plaintiff Express' registration of its EXPRESS® Marks as a matter of law. 15 U.S.C. § 1072. Therefore, it is fair to conclude that Defendants knew or should have know of Plaintiff Express' rights in the EXPRESS® Marks, and, at best, Defendants' intent in adopting EXPRESS and EXPRESS TEMPS is suspect.

Moreover, Defendants' actions are not consistent with those of an innocent infringer. Defendants failed to respond to any of the numerous cease and desist letters sent by Plaintiff Express, and continued use of the infringing marks after receipt of such letters. (Verified Complaint, ¶ 31.) This troubling behavior after receiving actual notice of infringement suggests bad faith on Defendants' part, and supports the issuance of an injunction against Defendants in this case. <u>See</u> <u>Public Service Co. of New Mexico</u>, 36 F. Supp. 2d at 439 (bad faith intent indicated by defendant's continued use of its mark after plaintiff notified defendant of its trademark rights.)

       *f.*      *The EXPRESS® Marks are strong and entitled to protection.*

13

"Strong" marks are afforded greater protection than "weak" marks. <u>Volkswagenwerk</u>, 814 F.2d at 819. The strength of a mark is based on the length of time a mark has been used and the relative renown in the field, the strength of the mark in the plaintiff's field of business, and the plaintiff's action in promoting the mark. <u>Boston Athletic Ass'n</u>, 867 F.2d at 32.

In the case at hand, the EXPRESS® Marks, by virtue of their registrations, are presumptively valid and entitled to protection. As established in <u>Equine Technologies</u>, this Court's inquiry into whether the EXPRESS® Marks merit trademark protection turns on the classification of such marks along the spectrum of "distinctiveness:"

> At one end of the spectrum there are generic terms that have passed into common usage to identify a product, such as aspirin, and can never be protected. In the middle there are so-called descriptive terms, such as a geographical term, which can be protected, but only if it has acquired "secondary meaning" by which consumers associate it with a particular product or source. At the other end of the spectrum, there are suggestive, arbitrary and fanciful terms that can be protected without proof of secondary meaning. These terms are considered "inherently distinctive."

68 F.3d at 544, n.2 (citation omitted).   As an initial matter, the EXPRESS® Marks that have been registered on the Principal Register by the USPTO are presumed to be inherently distinctive. 15 U.S.C. § 1115(a) (registration of mark on Principal Register "shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate"); <u>See also Quabaug Rubber Co. v. Fabiano Shoe Co.</u>, 567 F.2d 154, 161 (1st Cir. 1977) (federal registration "is prima facie evidence that such mark has become distinctive of the goods in commerce"). This prima facie showing shifts the burden of proof to Defendants, who must rebut the presumption of Plaintiff Express' exclusive right to use the federally registered EXPRESS® Marks in connection with the services indicated in their respective certificates of registration. <u>Keebler Co. v. Rovira Biscuit Corp.</u>, 624 F.2d 366, 373 (1st Cir. 1980).

14

Furthermore, because declarations have been filed pursuant to 15 U.S.C. § 1065 for, and because there is no pending judicial proceeding challenging Plaintiff Express' rights in, several of the federally registered EXPRESS® Marks— including specifically EXPRESS TEMPORARY SERVICE® and Design, Registration No. 1,718,629, and EXPRESS® and Design, Registration No. 1,700,779 (collectively, the "Incontestable Marks")—the certificates of registration for such Incontestable Marks are now incontestable and represent conclusive evidence of the validity, distinctiveness and registration of such marks, and of Plaintiff Express' ownership of, and exclusive right to use, such marks.  Verified Complaint, ¶ 17; See also 15 U.S.C. § 1115(b); Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 205 (1985).

        Even absent the mandated presumption, the EXPRESS® Marks are inherently distinctive, because they are not generic or merely descriptive, but rather are, at a minimum, "suggestive." A mark is "descriptive" if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods or services; whereas, a mark is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods or services.  Equine Technologies, 68 F.3d at 543-544 (holding that EQUINE TECHNOLOGIES is suggestive and not merely descriptive of hoof pads for horses).  In determining whether a mark is merely descriptive, the court must consider the mark in its entirety, with a view toward "what the purchasing public would think when confronted with the mark as a whole."  Id. (citation omitted).  When viewed in the entirety, neither EXPRESS nor EXPRESS TEMPORARY SERVICES is merely descriptive, because neither immediately conjures up the thought of the subject services—namely, staffing, personnel and employment services.  Rather, each mark is suggestive, because each requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the services.

Even if not inherently distinctive, the EXPRESS® Marks have gained secondary meaning through extensive sales, promotion and lengthy use. (Verified Complaint, ¶ 38.) A mark acquires distinctiveness or secondary meaning where, "in the minds of the public, the primary significance of a . . . term is to identify the source of the product rather than the product itself." Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982). Plaintiff Express has continuously used EXPRESS® for over twenty (20) years, and has achieved substantial recognition in the employment and personnel services field as evidenced by its over 400 franchisees, and its $8 billion in gross revenues over the last twenty (20) years. (Verified Complaint, ¶¶ 18 and 20.) Moreover, Plaintiff Express has consistently been recognized by the trade as one of the nation's top franchise companies and one of the largest and fastest-growing privately-held companies. (Verified Complaint, ¶ 19.) For example, in October of 2002, Franchise Times ranked Plaintiff Express as #1 of the top 200 franchise companies, and in 2003 and prior years, Entrepreneur ranked Plaintiff Express as #1 in franchise companies for business services/staffing. (Id.) Further, on November 27, 2000, Forbes ranked Plaintiff Express as #424 of the 500 top private companies for 1999 revenue, and in December of 1998, Inc. ranked Plaintiff Express as #9 of the 500 fastest growing private companies. (Id.) Accordingly, the EXPRESS® Marks have acquired secondary meaning.

The renown and recognition of the EXPRESS® Marks is further evidenced by the considerable time and money—over $100 million—Plaintiff Express has expended to promote its company and services, including on the Internet, in national publications, newspapers, at trade shows and on the radio and television. (Id.) Given the strength of the EXPRESS® Marks, there is a strong likelihood of confusion with Defendants' use of EXPRESS and EXPRESS TEMPS.

**B.     Plaintiffs will be irreparably harmed in the absence of immediate injunctive relief.**

"Few harms are more corrosive in the marketplace than the inability of a trademark holder to control the quality of bogus articles thought (erroneously) to derive from it." Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697, 700 (1st Cir. 1987). "[I]rreparable harm flows from an unlawful trademark infringement as a matter of law." Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992). "By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." Id. (citations omitted).

In the instant case, Defendants' use of EXPRESS and EXPRESS TEMPS in connection with temporary and permanent employment and personnel services irreparably injures Plaintiff Express by the loss of its right to protect its reputation and the ability to control the use of its marks. Calamari Fisheries, Inc., 698 F. Supp. at 1014. Consumers may assume that Defendants' infringing services are the same as, affiliated with or sponsored by Plaintiff Express and/or its authorized franchisees, despite the fact that Plaintiff Express has no control over the quality of such services. Moreover, consumer confusion about the source of the parties' goods and services sold under their respective marks diminishes the significant goodwill that Plaintiff Express has built up in its EXPRESS® Marks. Finally, Defendants' infringing use impedes Plaintiff Franchisee's merchandising rights under its franchise agreement with Plaintiff Express.

**C.    The balance of equities favors Plaintiffs.**

As an initial matter, the potential harm to Defendants warrants little consideration. As the First Circuit has explained in the analogous context of copyright infringement, "hardship that the defendant will suffer" because of "lost profits from an activity which has been shown to be infringing … merits little equitable consideration." Concrete Mach. Co. v. Classic Lawn

17

Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988) (citation omitted).  In any event, the harm to Plaintiffs outweighs any potential harm a preliminary injunction would cause to Defendants. Defendants have been using EXPRESS and/or EXPRESS TEMPS for a relatively short period of time. (Verified Complaint, ¶ 7.)  In fact, when the efforts of Defendants are balanced against the twenty (20) years and $100 million Plaintiff Express has invested promoting, advertising and developing its goodwill in the EXPRESS® Marks, the scales tip decisively in favor of Plaintiffs.

Moreover, this action should come as no surprise to Defendants.  Plaintiff Express sent Defendants numerous cease and desist letters, notifying Defendants that their use of EXPRESS and EXPRESS TEMPS infringed its EXPRESS® Marks, and offering them the opportunity to amicably resolve this matter, but Defendants completely ignored those letters, electing not to respond. (Verified Complaint, ¶ 31.)  Accordingly, Defendants have voluntarily assumed the legal risk associated with their use of EXPRESS and EXPRESS TEMPS, and should not now be allowed to complain of any potential harm resulting from the issuance of the requested preliminary injunction.

Courts in this district have found that preliminary injunctions were warranted under similar circumstances.  For example, in Calamari Fisheries, the district court found that the balance weighed in favor of the owner of THE DAILY CATCH, which had been used in commerce with extensive advertising and promotional activities for over fifteen (15) years.  698 F. Supp. at 1014-15.  The defendant, on the other hand, was a relative newcomer, and had been using its mark, THE VILLAGE CATCH, for only two (2) years.  Id.  In sum, given that Defendants, as newcomers with actual and constructive notice of Plaintiffs' rights, have proceeded forward at their peril, the balance of equities favors the issuance of a preliminary injunction.

**D.    An injunction against Defendants is consistent with the public interest.**

The First Circuit has recognized that providing trademarks with the greatest protection that can be given them serves the public interest because it allows the public to depend on the constancy of the quality of the goods it seeks. Volkswagenwerk, 814 F.2d at 820; Tanel Corp. v. Reebok Int'l, Ltd., 774 F. Supp. 49, 51 (D. Mass. 1990) ("public interest is served by promoting fair competition and preventing consumer confusion"). In the instant case, public deception and confusion has resulted and will continue to result from Defendants' infringing conduct unless this Court enjoins Defendants' use of EXPRESS and EXPRESS TEMPS in connection with temporary or permanent employment or personnel services.

## CONCLUSION

For the reasons stated above, Plaintiffs' proposed preliminary injunction should be granted.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiffs request an evidentiary hearing and oral argument on this motion.

Dated:    January 9, 2004                Respectfully submitted,

FLETCHER, TILTON & WHIPPLE, P.C.

By: _____
William D. Jalkut, BBO#250020
370 Main Street
Worcester, Massachusetts 01608
Tel: (508) 798-8621
Fax: (508) 791-1201

**Attorneys for Plaintiffs Express Franchise Services, L.P., and WRS Personnel Finders of Massachusetts, Inc., d/b/a Express Personnel Services**

658255

19